UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TR INFORMATION PUBLISHERS,**

    **Plaintiff,**

v.                                                Case No.  8:05-cv-517-T-30MSS

**RANDALL PUBLISHING COMPANY,
INC. and RANDALL-REILLY
PUBLISHING, L.L.C.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Partial Summary Judgment (Dkt. 43) and Defendants' Response to Plaintiff's Motion for Partial Summary Judgment (Dkt. 50); Defendants' Motion for Final and Partial Summary Judgment and Incorporated Memorandum of Law (Dkt. 51) and Plaintiff's Memorandum Opposing Defendants' Motion for Final and Partial Summary Judgment (Dkt. 57).

## FACTUAL BACKGROUND

Plaintiff is a publishing company that prints a publication entitled *The Trucker's Friend - The National Truck Stop Directory* (hereinafter "*The Trucker's Friend*"). *The Trucker's Friend* is a publication that lists truck stops and travel centers around the country to assist professional truck drivers in locating fuel, rest stops, repairs and food. Plaintiff began publishing *The Trucker's Friend* in 1986 and registered the trademark *The Trucker's Friend* shortly thereafter.

Defendant Randal Publishing, a publishing company that has been in existence since 1934, publishes over thirty magazines, including *Trucker's News*. *Trucker's News* has been a registered trademark of Defendants' since 1994.[1]

Plaintiff and Defendants have shared an amicable business relationship for several years and in fact, in August 2000 and again in 2003, engaged in negotiations for Defendants to acquire or purchase Plaintiff's publication. These negotiations, however, did not result in the purchase of *The Trucker's Friend*.

On or around February 2005, Defendants began publishing *The Trucker's News National Truck Stop Directory* (hereinafter *Trucker's News*). *The Trucker's News* was advertised to be a comprehensive listing of truckstops around the country, providing details as to the truckstops' amenities, i.e. showers, number of parking spaces, accepted food cards, restaurant listings, etc. *The Trucker's News* also provides a full color atlas and is sold at truckstops nationwide.

On March 7, 2005, Plaintiff filed an application with the United States Trial and Trademark Board in an effort to register the term *National Truck Stop Directory*. Defendant subsequently filed an objection to the application, but voluntarily removed the term "national" in its 2006 edition of *The Trucker's News*.

On March 17, 2005, Plaintiff filed a Complaint alleging Trademark Infringement and Unfair Competition under the Lanham Act (Dkt 1) and requesting injunctive relief. An

---

[1] Defendants state that *Trucker's News* has been their trademark since 1977. However, according to Plaintiff the term *The Trucker's News* has only been registered since 1994, a fact Defendant does not dispute.

Amended Complaint was subsequently filed on April 25, 2006, wherein Plaintiff, in addition to the trademark infringement claim, also alleged trade dress infringement, dilution and a violation of Florida's Deceptive and Unfair Trade Practices Act and sought injunctive relief (Dkt. 31). It is upon the Amended Complaint and Defendants' Answer and Affirmative Defenses the cross motions for summary judgment are based.[2]

## DISCUSSION

**I.     Summary Judgment Standard.**

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this rather exacting standard. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In applying this framework, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. See Arrington v. Cobb County, 139 F.3d 865, 871 (11th Cir.1998); Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997).

Equally clear, however, is the principle that the nonmoving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his or her favor. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir.1990). The nonmoving party "[m]ay not rest upon the mere allegations

---

[2] Defendants have not sought summary judgment as to Plaintiff's dilution claim. As such, this Order will not address said claim.

and denials of [its] pleadings, but [its] response … must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir.1998) ("Summary judgment may be granted if the evidence is 'merely colorable.'") (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505). Further, and significantly, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. See Earley, 907 F.2d at 1081. The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. See Celotex, 477 U.S. at 322.

## II.     Plaintiff's Motion for Partial Summary Judgment.

Plaintiff has filed its Motion for Partial Summary Judgment (Dkt. 43) as to all twenty of Defendants' affirmative defenses (Dkt. 33).[3] Plaintiff argues that Defendants' affirmative defenses are invalid and that Defendants' have failed to produce any evidence in support of the same. In support of its Motion, Plaintiff has attached Defendants' Answers to Interrogatories as well as the Declaration of Plaintiff's President and Owner, Robert de Vos.

---

[3] In their Response in opposition to Plaintiff's Motion for Summary Judgment, Defendants indicate they withdraw their unclean hands defense, i.e. their tenth and sixteenth affirmative defenses.

However, neither document provides any evidence which would tend to establish to this Court that no issue of material fact exists. In fact, the evidence submitted reveals quite the opposite. For example, in Defendants' Answers to Interrogatories, they specifically identify the ways in which *The Trucker's News National Truck Stop Directory* differs from Plaintiff's publication. However, in Mr. de Vos' declaration, he states the publications are similar and contain the same information. Clearly, the issue of whether the publications are similar and are subject to confusion in the consuming public is an issue of fact and material to the claims in Plaintiff's Amended Complaint. Accordingly, Plaintiff's motion for summary judgment as to Defendants' affirmative defenses is **denied**.

### III.  Defendants' Motion for Summary Judgment.

#### A.  Trademark Infringement.

To establish a trademark infringement claim under 15 U.S.C. § 1125(a), a plaintiff must prove: (1) the mark is distinctive and protectable, (2) the plaintiff owns the mark, (3) the mark has been properly registered, and (4) the defendant has used a similar mark which is likely to confuse consumers as to the source of the defendant's services or in this case product. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992). As stated, the first step in the analysis involves a determination of whether the mark is distinctive enough to deserve protection. See Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, 828 F. Supp. 925, 931 (M.D. Fla. 1992). "The distinctiveness of the mark at issue refers to how easily customers identify the [plaintiff's] mark with the respresented service" Gulf Coast Commercial Corp. v. Gordon River Hotel, 2006 WL 1382072 at 4 (M.D. Fla. 2006). A

mark's distinctive quality can be classified in one of three ways: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. See id. A generic term describes the basic nature of the service and is typically incapable of achieving service mark protection. Id. A descriptive term identifies a characteristic or quality of a service and may only be protected if it acquires a secondary meaning. Id. A suggestive term suggests the characteristics of the service and requires the consumer to utilize their imagination in order to understand the service. Id. However, no proof of secondary meaning is required for a suggestive term. Id. Finally, an arbitrary and fanciful term is so inherently distinctive that it bears no relationship to the service, and thus is protected without proof of secondary meaning. Id.

While the determination of which category a given mark belongs in is a question of fact, See Gulf Coast Commercial v. Gordon River Hotel, 2006 WL 1382072 at 4 (citing Investacorp, Inc. v. Arabian Investment Banking Corporation (Investcorp) E.C., 931 F.2d 1519, 1523 (11th Cir. 1991), the parties concede that *National Truck Stop Directory* is a descriptive term (Dkt 51, Ex. 2 at 1; Dkt. 57 at 6). The issue of whether *National Truck Stop Directory* has acquired secondary meaning is a question of fact. Therefore, summary judgment as to Plaintiff's Trademark Infringement claim is **denied**. See American Television and Communications Corporation v. American Communications and Television, Inc., 810 F.2d 1546, 1549 (11th Cir. 1987) (stating that the existence of secondary meaning is a question of fact).

**B.     Trade dress Infringement.**

In order to establish a claim of trade dress infringement, a Plaintiff must prove, (1) that the trade dress is inherently distinctive or has acquired secondary meaning, (2) that the features of the trade dress are primarily non-functional, and (3) that the trade dress of the defendant's product is confusingly similar. See AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1535 (11th Cir. 1986). As each of these elements involves a question of fact, summary judgment as to Plaintiff's trade dress infringement claim is **denied**. See id.

**C.     Florida's Deceptive and Unfair Trade Practices Act.**

In Defendants' Motion, they argue that Plaintiff is not entitled to damages under FDUTPA because FDUTPA only provides remedies for consumer transactions.[4] This Court agrees. Plaintiff has presented no evidence that this action constitutes a consumer transaction. Accordingly, it is not entitled to damages under FDUTPA. See Babbit Electronics, Inc. v. Dynanscan Corporation, 38 F.3d 1161, 1882 n7 (11th Cir. 1994). However, Plaintiff is entitled to injunctive relief, should a violation of FDUTPA be found. See Big Tomato v. Tasty Concepts, Inc., 72 F.Supp. 662, 664 (S.D. Fla. 1997). To the extent Plaintiff seeks damages under FDUTPA, summary judgment is appropriate and is hereby **granted**. Summary judgment, however, is **denied** as to Plaintiff's claims for injunctive relief.

---

[4] Defendants have not sought summary judgment as to the substantive nature of Plaintiff's FDUTPA claim. As such, this order does not address the merits of Plaintiff's claim and said claim will proceed to trial

**C.     Plaintiff's claims for monetary damages, treble damages and attorneys fees.**

Based on the above, this Court denies Defendants' motion for summary judgment as to those damages sought with the exception of any damages claimed under FDUTPA.

It is therefore ORDERED AND ADJUDGED that:

1.     Plaintiff's Motion for Partial Summary Judgment (Dkt. 43) is **denied.**

2.     Defendants' Motion for Final and Partial Summary Judgment and Incorporated Memorandum of Law (Dkt. 51) is **granted in part and denied in part**, as stated herein.

**DONE** and **ORDERED** in Tampa, Florida on October 6, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\05-cv-517 MSJ.frm